# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Willie K. Henderson,                                       Civil No. 12-12 (DWF/FLN)

          Plaintiff,

v.                                                        **MEMORANDUM**
                                                         **OPINION AND ORDER**

The City of Minneapolis (Minneapolis
Convention Center); Jeff Johnson, individually
and in his capacity as Assistant City Coordinator
and Executive Director of MCC; G. Jack Barr,
individually and in his capacity as former Event
Operations/Production Services Manager and current
Manager; Archie Carlos, individually and in his capacity
as Human Resources Manager; Kurt Hicok, individually
and in his capacity as Production Services Sr. Supervisor;
Gregory Langford, individually and in his capacity as Event
Operations Sr. Supervisor; Steve Egan, individually and in
his capacity as Shift Supervisor; Sheldon Drew, individually
and in his capacity as Shift Supervisor; Chad Leverson,
individually and in his capacity as Shift Supervisor; Don Perry,
individually and in his capacity as former Shift Supervisor;
Don Moody, individually and in his capacity as former Shift
Supervisor; Cheryl Arnett Senou,[1] individually and in her
capacity as OMS; John Zasada, individually and in his capacity
as former Shift Supervisor, Setup and current Supervisor,
Security & Safety; Eric Olson, individually and in his capacity
as CAS operator and Avalon Security Guard contracted with
or employed by MCC; Per Mar Security & Research Corp.,
doing business as Per Mar Security Services; and Omar Dahir,
individually and in his capacity as Per Mar Security Guard,

          Defendants.

---

[1]     It appears from the parties' submissions that Cheryl Arnett Senou's name was misspelled in the case-caption. The Court uses what appears to be the correct spelling.

Christopher R. Walsh, Esq., Walsh Law Firm, counsel for Plaintiff.

Darla J. Boggs and Gregory P. Sautter, Assistant City Attorneys, Minneapolis City Attorney's Office; and Chad A Staul, Esq., Wessels Sherman Joerg Liszka Laverty Seneczko PC, counsel for Defendants City of Minneapolis, Jeff Johnson, G. Jack Barr, Archie Carlos, Kurt Hicok, Gregory Langford, Steve Egan, Sheldon Drew, Chad Leverson, Don Perry, Don Moody, Cheryl Arnett Senou, John Zasada, and Eric Olson.

Chad A Staul, Esq., and James B. Sherman, Esq., Wessels Sherman Joerg Liszka Laverty Seneczko PC, counsel for Defendants Per Mar Security & Research Corp. and Omar Dahir.

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by the City of Minneapolis (the "City") (Minneapolis Convention Center ("MCC")),[2] Jeff Johnson, G. Jack Barr, Archie Carlos, Kurt Hicok, Gregory Langford, Steve Egan, Sheldon Drew, Chad Leverson, Don Perry, Don Moody, Cheryl Arnett Senou, and John Zasada (together, the "City Defendants")[3] (Doc. No. 59), and a Motion for Summary Judgment brought by Per Mar Security & Research Corp. d/b/a Per Mar Security Services

---

[2]     The MCC is not a legal entity separate from the City. *See, e.g.*, Minneapolis, Minn. Code of Ordinances ("M.C.O.") § 21.20. The City is the proper governmental defendant. *See Benford v. City of Minneapolis*, Civ. No. 10-4539, 2012 WL 6200365 (D. Minn. Dec. 2012). Thus, the MCC will be discussed only as a facility operated by the City.

[3]     City Defendants do not include Eric Olson. Olson was named as a defendant in the Complaint, but has not been served. In addition, Plaintiff has not filed a summons with the Court demonstrating that Defendants Jeff Johnson, Archie Carlos, or Kurt Hicok have been served.

("Per Mar") and Omar Dahir ("Dahir") (together, the "Per Mar Defendants") (Doc.

No. 68). For the reasons discussed below, the Court grants both motions for summary

judgment.[4]

## BACKGROUND

Plaintiff is an African American male who was 47 years old at the time he filed the

present Complaint. (Doc. No. 1, Compl. ¶ 15.) Plaintiff was a full-time employee of the

MCC. (*Id*.) At the time period relevant to this lawsuit, Plaintiff worked as an Operations

Maintenance Specialist ("OMS"). (*Id*.) Plaintiff was hired by the MCC in February

2003, and was terminated in August 2011. (*Id*. ¶ 16.) Defendant Per Mar is a security

company that had a contract with the City to do event security at the MCC. (Doc. No. 72,

Belton Decl. ¶¶ 2, 5.) Dahir was employed by Per Mar to assist with event security.

(Doc. No. 71, Staul Decl. ¶ 7, Ex. F ("Dahir Dep.") at 9.)

In broad terms, Plaintiff asserts several causes of action all related to the central

claim that Defendants discriminated against him based on his race, color, national origin,

age, disabilities, and gender in violation of federal and state law. (*See generally* Compl.)

In particular, Plaintiff alleges the following claims:[5] (1) violation of 42 U.S.C. § 1983

(equal protection); (2) violation of 24 U.S.C. § 1981 (discrimination); (3) violation of 42

U.S.C. § 2000e, *et seq*. ("Title VII"); (4) violation of 42.U.S.C. § 12101, *et seq.*

---

[4] Defendants also filed a Joint Motion to Strike (Doc. No. 95), which is granted in part and denied in part as explained herein.

[5] Plaintiff's counts are mis-numbered and some have multiple claims within a single count. The Court breaks them out for clarity.

("ADA"); (5) violation of 29 U.S.C. 626 ("ADEA"); (6) violation of Minn. Stat.

§ 181.81, the Minnesota Dismissal for Age Act ("MDAA"); (7) violation of Minn. Stat.

§ 363A, the Minnesota Human Rights Act ("MHRA"); (8) violation of the Minneapolis

Civil Rights Ordinance ("MCRO"); (9) violation of Minn. Stat. § 176.82;

(10) defamation; (11) tortious interference; and (12) negligent infliction of emotional

distress ("NIED").

On July 9, 2011, a conflict arose between Plaintiff and Dahir while Dahir was

working security for Per Mar in a public area near the MCC ballroom.  (Doc. No. 63,

Sautter Aff. ¶¶ 4, 25, Exs. 2, 23.)  Dahir's duties that day included preventing people

from entering the ballroom through the exit doors.  (Dahir Dep. at 27, 28.)  Plaintiff was

also working at the MCC that day, and his niece and nephew, who did not have tickets to

the event at the MCC, visited Plaintiff.  (Staul Decl. ¶ 3, Ex. B ("Henderson Dep.")) at

165-66; Dahir Dep. at 59.)  At one point, Plaintiff's niece and nephew walked towards

the exit door to the ballroom.  (Dahir Dep. at 59.)  Plaintiff claims that Dahir stopped

them and attempted to look at Plaintiff's identification badge, which was on his chest,

and that he and Dahir then engaged in a verbal altercation.  (Henderson Dep. at 168, 173.)

Plaintiff claims that Dahir "cursed out" Plaintiff and his family.  (*Id*. at 173.)  Plaintiff's

and Dahir's supervisors intervened.  (Henderson Dep. at 173; Dahir Dep. at 117.)

Soon thereafter, Plaintiff was terminated.  In a letter dated August 9, 2011, an

MCC Senior Event Operations Supervisor explained the bases for Plaintiff's termination,

noting that Plaintiff attempted to lead his niece and nephew into a ticketed event without

tickets and then got into a heated argument with Dahir when Dahir attempted to address

his niece and nephew. (Sautter Aff. ¶ 25, Ex. 23 at 1.) The letter further explains that Plaintiff acted unprofessionally, conducted himself in a loud and disrespectful manner towards his supervisor in front of the public and co-workers, and interfered with Dahir's job duties. (*Id*.) After an investigation into the incident, the MCC determined that Plaintiff violated Civil Service Commission Rules and City policies regarding interference with the work of employees, insubordination, discourtesy, and work conduct. (*Id*.) Plaintiff's termination letter also referenced Plaintiff's history of misconduct while an employee of the MCC. (*Id*. at 2-3.) Plaintiff's history included prior incidents (some of which were followed by discipline and/or counseling) for discourtesy, insubordination, and unprofessional behavior. (*Id*.) Several of Plaintiff's annual performance reviews noted that Plaintiff had problems with conflict resolution and maintaining good working relationships. (Sautter Aff. ¶¶ 6, 7, 9, 10, 11& Exs. 4, 5, 7, 8, 9.)

Plaintiff filed three charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Minneapolis Department of Civil Rights ("MDCR"). First, in 2007, Plaintiff filed a charge of discrimination, in which Plaintiff alleged he had been harassed and discriminated against by his supervisors. (Sautter Aff. ¶ 18, Ex. 16.) In this charge, Plaintiff referenced two instances where he had complained about disputes he had with contract security guards and his complaints were allegedly ignored. (*Id*.) At least one complaint involved a supervisor who allegedly used a racial epithet. (*Id*.) The 2007 charge was originally based on race, but was later amended to add allegations of discrimination based on race, sex, age, and retaliation. (*Id*.) The

MDCR and EEOC issued dismissals and rights to private action on July 29, 2011, and September 30, 2011, respectively. (*Id*.)

Plaintiff filed a second charge of discrimination in 2009. (*Id*. ¶ 19, Ex. 17.) In the 2009 charge, Plaintiff alleged harassment and discrimination by supervisors, and specifically mentioned a February 17, 2009 incident, during which Plaintiff claims he returned from the hospital due to a workplace injury and was asked by his supervisor: "What kind of papers do you have for me to sign, boy?" (*Id*.) The charge was originally based on race and disability, but was later amended to include allegations of discrimination based on race, sex, disability, and retaliation. (*Id*.) The MDCR and EEOC issued dismissals and rights to private action on August 1, 2011, and September 29, 2011, respectively. (*Id*.)

Plaintiff filed a third charge of discrimination in 2011. (*Id*. ¶ 20, Ex. 18.) In this charge, Plaintiff alleged that he was discriminated by unnamed supervisors and cites to the July 9, 2011 incident, which ultimately led to his termination. (*Id*.) This charge was based on race, retaliation, national origin, disability, and age. (*Id*.) The MDCR and EEOC issued dismissals and rights to private action on June 12, 2012, and December 11, 2012, respectively. (*Id*.)

Plaintiff filed the present Complaint on January 3, 2012. (Compl.) City Defendants and Per Mar Defendants move separately for summary judgment.

## DISCUSSION

### I.    Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### II.    Plaintiff's Counsel's Conduct and Defendants' Joint Motion to Strike

As an initial matter, it is necessary to comment on the conduct and litigation practices of Plaintiff's counsel, Mr. Walsh, and in particular, the quality of the filings he

has submitted in this action. Plaintiff filed a lengthy Complaint, alleging ten separate

causes of action against sixteen defendants. It appears that portions of the Complaint are

identical, or nearly identical, to pleadings filed by Plaintiff's attorney in another case,

*Metcalf v. City of Minneapolis*, 11-CV-3023. (*See, e.g*, Compl. ¶ 28 ("Many of the

events and allegations described in the First Amended Complaint will be cited to here, as

Mr. Metcalf has worked in the same racially hostile and discriminatory environment as

those Plaintiffs, for seventeen years.").) In addition, although the Complaint contains

over 200 paragraphs, it is not always clear which claims are asserted against each

Defendant, making it difficult for the parties and the Court to ascertain the specifics of

Plaintiff's claims. Mr. Walsh also apparently failed to clarify matters during discovery.

When asked via an interrogatory to identify the claims asserted against the Per Mar

Defendants, Plaintiff answered by identifying Counts VI (aiding and abetting), XI

(tortious interference), and IX (negligent infliction of emotional distress), but also

qualified the response by indicating that Plaintiff's claims against the Per Mar Defendants

were *not limited* to these claims. (Doc. No. 71, Ex. 1 at App. 3-4.) This type of evasive

response has only added to the confusion and uncertainty regarding Plaintiff's claims.[6]

---

[6] In his opposition to the Per Mar Defendants' motion for summary judgment, Plaintiff responds in substance only to arguments pertaining to his aiding and abetting and reprisal claims under the MHRA, and his negligent infliction of emotional distress claim. Accordingly, Plaintiff is limited to asserting those claims against the Per Mar Defendants.

In addition, Plaintiff's filings in opposition to the pending motions for summary judgment were untimely. After seeking and being granted additional time to respond (Doc. No. 79), Plaintiff filed two lengthy memoranda in opposition (Doc. Nos. 80, 81) and the supporting Affidavit of Patrick Jay Rohde (Doc. No. 84) one day *after* the Court's extended deadline. Not only were the filings late, but the substance and quality of Plaintiff's opposition briefs is deficient. First, Plaintiff's briefs are rife with unsupported factual assertions, blank citations, and information not in the record and/or related to other matters. For example, Plaintiff's counsel points out that he has represented plaintiffs in different matters, including *Benford v. City of Minneapolis*, 10-cv-4539, wherein the plaintiffs sued the MCC for discrimination. Plaintiff's counsel refers to facts relevant to the *Benford* case in his opposing papers and improperly refers the Court to prior depositions in the *Benford* case that are not part of the record in this matter.[7] These references are inappropriate, as Plaintiff's burden in opposing a motion for summary judgment is to set forth specific facts—in the record before the Court— showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

While Plaintiff's untimely filing and the unacceptable condition of his legal briefs would justify them being stricken from the record, the Court declines to strike the opposition briefs (Doc. Nos. 80, 81) or the Rhode Affidavit (Doc. No. 84) in the interest of reaching the merits of Plaintiff's case. However, the Court does strike the Affidavit of

---

[7]     The Court notes that judgment was entered for the defendants in *Benford*. *Benford*, 10-CV-4539, 2012 WL 6200365 (D. Minn. Dec. 12, 2012).

Christopher Walsh (Doc. No. 93). Plaintiff filed the Walsh Affidavit on May 17, 2013, *ten* days after the filing deadline for supporting documentation. In addition, the Walsh Affidavit consists largely of improper argument, hearsay, and makes references to missing exhibits. The Court cannot condone the filing of an untimely affidavit in such poor form. Thus, the Walsh Affidavit is stricken from the record, and, considering the pattern of unacceptable filings and litigation tactics by Plaintiff's attorney, the Court also finds it appropriate to require Plaintiff's attorney to pay the attorney fees and costs that Defendants incurred in bringing their Joint Motion to Strike.

## III.    Individual Statutory Liability

Plaintiff brings claims under Title VII, the ADEA, the ADA, the MDAA, the MHRA, and the MCRO against City Defendants. However, Title VII does not allow liability against the individually-named Defendants, each of whom are or were municipal employees. *See Spencer v. Ripley Cnty. State Bank*, 123 F.3d 690, 691-92 (8th Cir. 1997). Similarly, the ADEA and ADA do not attach liability to individual employees. *See Herrero v. St. Louis Univ. Hosp.*, 929 F. Supp. 1260, 1266 (E.D. Mo. 1996) (ADEA & Title VII); *Alsbrook v. City of Maumell*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (ADA). The MHRA allows liability against employees for aiding and abetting violations, but liability for direct violations of the statute is only allowed against "employers." *See Iyorbo v. Quest Int'l Food Flavors & Food Ingredients Co.*, Civ. No. 03–5276, 2003 WL 22999547, at *3 (D. Minn. Dec. 19, 2003). Finally, the MDAA and MCRO do not allow individual employee liability. *See Arens v. O'Reilly Auto., Inc.*, 874 F. Supp. 2d 805,

807-08 (D. Minn. 2012); M.C.O. § 139.40(b). Accordingly, the individually-named City Defendants cannot be held liable under these statutes.

## IV. Plaintiff's Discrimination Claims against the MCC

Plaintiff alleges generally that he was discriminated and retaliated against under various federal and state statutes. City Defendants move for summary judgment on these claims and correctly point out that, in his opposition, Plaintiff failed to specifically address whether several of the statutes were violated. City Defendants argue that these claims, therefore, have been abandoned, and alternatively, even if Plaintiff had addressed these claims, they fail as a matter of law because Plaintiff has not pointed to any evidence that the acts of City Defendants were motivated by discriminatory animus or retaliatory motive.

In the fact section of his brief, Plaintiff makes numerous factual allegations, many of which are not backed up by record citations and/or are irrelevant and stale. For example, Plaintiff generally asserts that the MCC has a history of using discriminatory practices and creating a hostile work environment. Plaintiff asserts, among other things, that the MCC has a history of giving out unequal work assignments and discipline based on race, retaliating against employees who complain about work conditions and discrimination, and racially profiling and spying on its employees. However, Plaintiff offers very few actual citations to the record to back up these assertions. Plaintiff also relies on allegations regarding the MCC workplace that occurred years before Plaintiff began working at the MCC. With respect to Plaintiff's period of employment, Plaintiff relies primarily on three incidents as evidence of discrimination. First, Plaintiff points to

an incident in March 2011 where he received a note with a racial epithet in his locker. Plaintiff asserts that he reported the note incident, but that no remedial action was taken. Second, Plaintiff points to an incident in April 2011 where another employee falsely accused him of concealing a gun, after which the MCC searched Plaintiff and his locker. Third, Plaintiff points to the July 2011 incident with Dahir, wherein Plaintiff claims that Dahir racially profiled Plaintiff and his niece and nephew.

The Court agrees that by failing to specifically address whether certain statutes were violated, Plaintiff has failed to meet his burden, as the non-moving party, to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256. For this reason, alone, summary judgment would be warranted on those claims. Even so, the Court addresses the merits of Plaintiff's discrimination claims.

The burden-shifting framework promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to all of Plaintiff's claims for discrimination, retaliation, and hostile work environment. *See*, *e.g. Lockridge v. Board of Trustees of Univ. of Ark.*, 315 F.3d 1005, 1013 (8th Cir. 2003) (Title VII & §§1981, 1983); *Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 637 (8th Cir. 2011) (ADEA & MHRA); *Gonzalez v. City of Minneapolis*, 267 F. Supp. 2d 1004, 1011 (D. Minn. 2003) (MCRO); *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032, 1034 (8th Cir. 2005) (ADA).

Under the *McDonnell Douglas* framework, if a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411

U.S. at 802.  If the employer is able to articulate such a reason, the burden then shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination.  *Id*. at 804-05.

## A.    Disparate Treatment and Retaliation

As discussed above, Plaintiff's Complaint and memoranda in opposition to the pending motions for summary judgment contain numerous missing citations and irrelevant factual allegations.  After reviewing the record, the bases for Plaintiff's discrimination claims remain unclear and unsupported.  With respect to Plaintiff's claim that he was disciplined differently because of his race or any other prohibited basis, Plaintiff has not pointed to evidence that similarly situated individuals were treated preferentially for similar offenses.  Even if Plaintiff could establish a prima facie case of discrimination, Defendants have submitted evidence that Plaintiff was terminated based on a legitimate, non-discriminatory reason—Plaintiff's behavior towards management and fellow employees—and Plaintiff has not pointed to record evidence that could lead a reasonable juror to conclude that this reason was pretext for discrimination or retaliation.[8]  In particular, it appears that Plaintiff relies primarily on three incidents to demonstrate discriminatory motive in support of his claims:  the March 2011 note found in his locker;

---

[8]    The Court notes that Plaintiff attempts to rely on the March 2011 incident involving the note in his locker and the April 2011 incident involving the search for a gun to support his claim of discrimination.  These incidents are not described in Plaintiff's charges of discrimination, and therefore, Plaintiff has failed to exhaust his administrative remedies with respect to these incidents.  (Sautter Decl. ¶¶ 18-20, Exs. 16-18.)  Even so, any claim of discrimination based on these incidents fails on the merits.

the April 2011 search for a gun; and the July 2011 conflict with Dahir. Plaintiff wholly

fails, however, to connect the first two incidents to his termination. Moreover,

Defendants have submitted evidence that Mark Zirbel, who made the final decision on

Plaintiff's termination after the July 2011 altercation, was unaware of Plaintiff's

July 28, 2011 charge of discrimination when he decided to terminate Plaintiff. (Doc.

No. 91, Zirbel Decl. ¶ 6.)

### B. Hostile Work Environment

Plaintiff alleges hostile work environment based on his membership in various

protected classes, namely race and sex. To sustain such a claim, Plaintiff must show that:

(1) he is a member of a protected class; (2) he is subjected to unwelcome [class]-based

harassment; (3) the harassment was because of membership in the protected class; and

(4) the harassment affected a term, condition, or privilege of his employment. *Anderson

v. Durham D & M, LLC*, 606 F.3d 513, 518 (8th Cir. 2010) (citation omitted). Under

Eighth Circuit law, the workplace must be "permeated with discriminatory intimidation,

ridicule, and insult that is sufficiently severe and pervasive." *Id*. (citation omitted). In

addition, "the environment must be both objectively hostile as perceived by a reasonable

person and subjectively abusive as actually viewed" by Plaintiff. *Id*. (citation omitted).

Plaintiff's allegations of a hostile work environment do not raise an issue of

material fact that could lead a reasonable juror to conclude that hostility towards

Plaintiff's protected class was severe and pervasive. In support of his hostile work

environment claim, Plaintiff cites generally to threats, humiliation, offensive words, and

interference with Plaintiff's job, but again focuses primarily on the March 2011 note in

his locker and the April 2011 gun search. The Court concludes that Plaintiff's allegations of a hostile work environment are insufficient as a matter of law to survive summary judgment. City Defendants have pointed to record evidence demonstrating that the MCC took action after Plaintiff reported the note incident. (Sautter Decl. ¶¶ 14, 15.) Namely, MCC management interviewed the person suspected of writing the note, who denied his involvement until having his deposition taken. (*Id*. ¶ 17, Ex. 15 at 176.) At the time that Plaintiff reported the incident, police were called to investigate. (*Id*. at 211.) In addition, Plaintiff has not pointed to any evidence to suggest that the investigation into whether Plaintiff had a gun in his locker was motivated by race or any other prohibited factor, or that the single search created a sufficiently hostile environment to support a claim.

### C. Disparate Impact

Plaintiff also claims discrimination by way of disparate impact. A claim for disparate impact discrimination invokes a different analysis from disparate treatment discrimination. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-53 (2003). To establish a prima facie case of disparate impact, a plaintiff must: (1) identify a specific, facially-neutral employment practice; and (2) "statistical evidence of a kind and degree sufficient to show that the practice in question caused the plaintiff to suffer adverse employment action because of his or her membership in a protected group." *Evers v. Alliant Techsys., Inc*., 241 F.3d 948, 953-54 (8th Cir. 2001). The Court declines to analyze the merits of this claim because Plaintiff has not exhausted his administrative remedies with regard to a disparate impact claim. *See, e.g., Brown v. Ameriprise Fin. Servs., Inc*., 707 F. Supp. 2d 971, 977 (D. Minn. 2010) (dismissing disparate impact

claim for failure to exhaust administrative remedies). None of Plaintiff's charges of discrimination allege a claim of disparate impact discrimination. Even if Plaintiff had exhausted his administrative remedies, his disparate impact claim would still fail. Plaintiff's Complaint contains no allegation of a specific facially-neutral policy that causes a disparate impact, and Plaintiff fails to point to any statistical evidence to support such a claim.

For all of the above reasons, the Court concludes that Plaintiff's discrimination and retaliation claims against the MCC fail as a matter of law.

## V. Section 1983 Claim Against the MCC

It is well-established that a governmental entity cannot be held liable under § 1983 on a respondeat superior theory. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). For a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Id.* at 694. A formal action, or policy, is one that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City's] officers." *Id.* at 690. In addition to an officially adopted policy, liability may attach to a city for constitutional deprivations that result from "custom," even though the city may not have formally approved the custom. *See id.*

Here, Plaintiff appears to argue that the City, through unlawful policies and practices, subjected Plaintiffs to harassment, discrimination, and retaliation in violation of the Fourteenth Amendment. (*See* Compl. ¶¶ 126-135.) Plaintiff, however, fails to identify any policy pursuant to which his constitutional rights have been violated. The

Court concludes that Plaintiff has wholly failed to demonstrate the existence of a factual issue that would support a *Monell* claim. Accordingly, Plaintiff's *Monell* claim is properly dismissed.

## VI. Section 1981 and 1983 Claims Against the Individual Defendants

A "federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." *Artis v. Francis Howell N. Band Booster Ass'n, Inc*., 161 F.3d 1178, 1181 (8th Cir. 1998) (citation omitted). Here, Plaintiff brought claims under both §§ 1983 and 1981, and specifically named equal protection under the Fourteenth Amendment as the basis of his § 1983 claim. To prevail, Plaintiff must present evidence of purposeful racial discrimination. *Lockridge*, 315 F.3d at 1009. The *McDonnell Douglas* burden shifting analysis is applied to employment discrimination claims based on § 1981 and the equal protection clause. *Id*. at 1010. For the reasons discussed above, Plaintiff's claims fail under the *McDonnell Douglas* analysis. The Court also finds that qualified immunity shields the individually-named defendants from § 1981 liability, as Plaintiff cannot establish that there has been any violation of a clearly established statutory or constitutional right of which a reasonable person would have known. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[9]

---

[9]     The Court notes that Defendant Cheryl Senou was a co-worker of Plaintiff's, and there is no evidence that she acted under color of law.

## VII.    Remaining Claims

Plaintiff also asserts claims under Minn. Stat. § 176.82 (Count VIII), Minn.

Stat. 181.81 (Count V), aiding and abetting (Count VI), defamation (Count X), tortious

interference with contract (Count XI), and NIED (Count IX).  Plaintiff offered neither a

rebuttal to City Defendants' motion for summary judgment nor any evidence to support

his claims for aiding and abetting and defamation.  Instead, it appears that Plaintiff asserts

these two claims only against the Per Mar Defendants.

### A.    Minn. Stat. § 176.82

In Count VIII, Plaintiff alleges a claim for retaliatory discharge and obstruction of

benefits in violation of the Minnesota Workers Compensation Act, Minn. Stat. § 176.82.

That provision states:

> Any person discharging or threatening to discharge an employee for
> seeking workers' compensation benefits or in any manner intentionally
> obstructing an employee seeking workers' compensation benefits is liable
> in a civil action for damages . . . .

Minn. Stat. §176.82.  The *McDonnell Douglas* framework applies to retaliation claims

under this provision.  *See Kunferman v. Ford Motor Co.*, 112 F.3d 962, 965 (8th Cir.

1997).  Plaintiff has failed to point to any evidence to demonstrate that he was prohibited

from seeking workers' compensation benefits or that he was disciplined or terminated

based on a workers' compensation claim.  Accordingly, this claim is properly dismissed.

### B.    Minn. Stat. § 181.81

In Count V, Plaintiff alleges a violation of Minn. Stat. §181.81, the MDAA.

Plaintiff did not offer any arguments in opposition to the pending motions for summary

judgment and has, therefore, abandoned the claim. Even so, the Court notes that the MDAA states, in relevant part: "It is unlawful for any private sector employer to refuse to hire or employ, or to discharge . . . any individual on the grounds that the individual has reached an age of less than 70 . . . ." Minn. Stat. § 181.81, subd. 1. In addition to the reasons stated above with respect to Plaintiff's discrimination claims, this claim fails because it only applies to *private* sector employers. Further, Plaintiff has not pointed to any record evidence that any actions taken with regard to him while employed by the MCC were due to his age.

### C.    Aiding and Abetting

In Count VI, Plaintiff alleges a claim for aiding and abetting illegal discrimination in violation of the MHRA and MCRO. (Compl. ¶¶ 170-73.) The MHRA prohibits any person from intentionally aiding, abetting, inciting, coercing, or compelling another person to engage in the discriminatory conduct prohibited by the MHRA. Minn. Stat. § 363A.14. A defendant is liable for an aiding and abetting violation under the MHRA if: (1) another person's conduct violates the MHRA; and (2) the defendant knows that this person's conduct violates the MHRA and the defendant gives substantial assistance or encouragement to the other person. *Matthews v. Eichorn Motors, Inc.*, 800 N.W.2d 823, 830 (Minn. Ct. App. 2011) (quoting Restatement (Second) of Torts § 876(b) (1979)). Generally, knowledge of a violation combined with inaction does not constitute "substantial assistance." *See id.*, 800 N.W.2d at 831 (citation omitted). Individual employees are not liable under the MHRA for discrimination, though they may be liable for aiding and abetting a violation of the MHRA. *Iyorbo*, Civ. No. 03-5276, 2003 WL

19

22999547, at *3.  The MHRA standard for "aiding and abetting" also applies to Plaintiff's MCRO claims.  *See, e.g., St. Hilaire v. Minco Prods., Inc.*, 288 F. Supp. 2d 999, 1004 n.7 (D. Minn. 2003) (citation omitted).

Plaintiff's aiding and abetting claims are unsupported by evidence.  As discussed above, Plaintiff has failed to establish a genuine question of material fact with respect to any alleged MHRA violation.  Without an underlying violation, no claim for aiding and abetting can survive.

### D. Tortious Interference with Contract

In Count XI, Plaintiff asserts a claim for tortious interference with contract.  Such a claim requires the existence of a contract, the alleged wrongdoer's knowledge of the contract, and an intentional procurement of its breach, without justification, that results in damage to the plaintiff.  *Maness v. Star-Kist Foods, Inc.*, 7 F.3d 704, 709 (8th Cir. 1993) (citing *Furlev Sales and Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982)).  Here, Plaintiff offers no evidence to support this claim.  Accordingly, it is properly dismissed.

### E. Defamation

In Count X, Plaintiff asserts a claim for defamation.  Plaintiff has failed to point to any evidence in the record or provide any arguments in support of his defamation claim.  This claim is properly dismissed.

### F. Negligent Infliction of Emotional Distress

In Count IX, Plaintiff alleges a claim for negligent infliction of emotional distress.  To establish such a claim under Minnesota law, a plaintiff must prove the four elements

of a negligence claim:  duty, breach, injury, and causation.  *Engler v. Ill. Farmers Ins.*

*Co.*, 706 N.W.2d 764, 767 (Minn. 2005).  In addition, a plaintiff must establish that he or

she:  (1) was within a zone of danger of physical impact; (2) reasonably feared for his or

her own safety; and (3) suffered severe emotional distress with attendant physical

manifestations.  *Id.*  Plaintiff has failed to point to any evidence in the record or provide

any arguments in support of his negligent infliction of emotional distress claim.  This

claim is properly dismissed.

## ORDER

For the reasons stated above, **IT IS HEREBY ORDERED**:

1.     Defendants' Joint Motion to Strike (Doc. No. [95]) is **GRANTED IN**

**PART** and **DENIED IN PART** as follows:

    a.     The Walsh Affidavit (Doc. No. [93]) is **STRICKEN** from the

record.

    b.     The Court declines to strike Plaintiff's opposition briefs or the

Rhode Affidavit.

    c.     Plaintiff's attorney shall pay attorney fees and costs that

Defendants' incurred in bringing their Joint Motion to Strike.  In this

regard, Defendants shall submit an affidavit attesting to the fees and costs

expended.

2.     City Defendants' Motion for Summary Judgment (Doc. No. [59]) is

**GRANTED**.

3. Per Mar Defendants' Motion for Summary Judgment (Doc. No. [68]) is

**GRANTED**.

4. Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: October 16, 2013                  <u>s/Donovan W. Frank</u>
                                                 DONOVAN W. FRANK
                                               United States District Judge